# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON

Assigned on Briefs September 5, 2012

## JONATHAN WILLIAMS v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Lauderdale County**
**No. 8793     Joseph H. Walker, III, Judge**

---

**No. W2012-00107-CCA-R3-PC  - Filed January 22, 2013**

---

The Petitioner, Jonathan Williams, appeals the Lauderdale County Circuit Court's denial of his petition for post-conviction relief from his convictions of attempted second degree murder and possession of a handgun by a convicted felon, for which he received an effective sentence of twenty years.  In this appeal, the Petitioner contends he received ineffective assistance of counsel and that his guilty pleas were not entered knowingly and voluntarily. Upon review, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which THOMAS T. WOODALL and JEFFREY S. BIVINS, JJ., joined.

George D. Norton, Jr., Ripley, Tennessee, for the Petitioner-Appellant, Jonathan Williams.

Robert E. Cooper, Jr., Attorney General and Reporter; David H. Findley, Senior Counsel; D. Michael Dunavant, District Attorney General; and Julie Pillow, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION

In January 2010, the Petitioner, Jonathan Williams, was arrested for shooting Toddy Pettigrew in the face and was charged with attempted first degree murder, employment of a firearm during the commission of a dangerous felony, and possession of a handgun by a convicted felon.  At the time of his arrest, the Petitioner was on probation for several charges, which ultimately resulted in an effective nineteen-year sentence.  While released on bond for the attempted first degree murder charge, the Petitioner retained counsel and later was re-arrested for another unrelated drug charge.  In October 2010, the Petitioner entered a guilty plea to attempted second degree murder and possession of a handgun by a convicted felon

and was sentenced to a concurrent term of twenty years and six years, respectively. The plea agreement further provided that these sentences were to be served concurrently with his nineteen-year sentence on the prior charges.

At the plea colloquy in October 2010, the Petitioner stipulated to the State's recitation of the facts:

> [O]n January 8, 2010, Mr. Toddy Pettigrew had stopped by the residence where [the Petitioner] was we believe living, or at least he was there on that particular day; that they had some limited conversation; that [the Petitioner] said wait a minute; Mr. Pettigrew was in a truck, and as he was backing the truck up, [the Petitioner] asked him to wait; he went back in the residence for a moment, came back out with a handgun and fired through the windshield of the truck striking Mr. Pettigrew in the face.
>
> Mr. Pettigrew had to receive extensive medical treatment, first at the emergency room and then later at The Med, and I believe he is still under a doctor's care with regard to his injuries. He was able to recover but has some issues with regard to damage that was done to his jaw and teeth with regard to the shot that struck him in the jaw area of his face.
>
> Mr. Pettigrew would have come to court, identified the individual who had shot him in the face, which would have been [the Petitioner].

The Petitioner acknowledged the rights he was waiving by entering a guilty plea. He further acknowledged that he was charged with a Class A felony, attempted first degree murder, for which the State sought to classify him as a Range III career offender, requiring a sixty-year sentence to be served at sixty percent. He understood that the plea agreement reduced this charge to attempted second degree murder, a Class B felony, and that the State recommended a sentence of twenty years at thirty-five percent as a multiple offender. Regarding the Class E felony charge of possession of a handgun by a convicted felon, the Petitioner understood that he would receive a six-year sentence as a career offender to run concurrent with the attempted murder conviction. The Petitioner also understood that, based on the plea agreement, the charge of employing a firearm during the commission of a dangerous felony would be dismissed. He acknowledged he had other convictions which would be served concurrently with the sentences he received that day.

The Petitioner further stated that he was satisfied with Counsel's representation and that he had "had adequate time to meet with an attorney to discuss this case and any defense to the charges" and that he was "in fact guilty of an offense." The trial court accepted the

pleas and revoked the Petitioner's probation on the prior charges while ordering all sentences to be served concurrently.

The Petitioner timely filed a pro se petition for post-conviction relief alleging ineffective assistance of counsel and an involuntary guilty plea. The following day, the post-conviction court appointed counsel for the Petitioner, however, the Petitioner retained counsel, who later filed an amended petition.

At the post conviction hearing, the Petitioner testified that when he first met Counsel in January 2010, he "set a[n] example about a case, what if somebody would have did [sic] such and such[.]" The Petitioner stated that he did not discuss any specifics about his case with Counsel until after he was re-arrested while on bond for the instant offenses. While in custody Counsel visited the Petitioner and discussed the specifics of his case and the plea agreement.

The Petitioner was concerned because Counsel had failed to inform him of or investigate various aspects of his case. Specifically, the Petitioner said that Counsel had not spoken with the victim or police officers; that Counsel did not tell him whether a gun was found or whether there were other eyewitnesses to the offense; and that Counsel failed to advise the Petitioner whether he should testify. According to the Petitioner, Counsel never interviewed neighbors of the crime scene and failed to tell the Petitioner that his criminal record might not have to be admitted at trial. The Petitioner further stated that although Counsel showed him motions, the Petitioner did not attend any motion hearings. The Petitioner said Counsel did not discuss a defense to the attempted murder charge or the probation violation with him, and if he had known what evidence the State planned to present, he would have proceeded to trial.

The Petitioner said that at the time he entered his plea, he did not understand the plea agreement. He said he did not know much about his case in October 2010, and he accepted the plea because he understood from Counsel that "[i]f [he] took the 20 at 35 percent, [he] would do a minimum of seven years, which with good time would be . . . three to four years." However, he had since learned that "with a case like that in prison . . . . [i]t's no guarantee to get parole." He said he felt pressured to accept the plea because "everything happened so fast before the trial date." He planned on proceeding to trial "until all that time started getting throwed at me."

The Petitioner said that when he received the plea bargain, Counsel told the Petitioner that it was the Petitioner's decision to accept or reject the offer. The Petitioner said that Counsel "kept telling [him] that it's on [him] if [he] want[ed] to go to trial" and "[n]ot up to [Counsel]." He said Counsel advised him the jury likely would find him guilty based upon

-3-

his criminal record, but it just "took one" juror to avoid a conviction. The Petitioner agreed that Counsel discussed the possibility of an acquittal and said, "[i]t was just, Who knows. It was whatever I want to do. It was on me if I wanted to go to trial."

On cross-examination, the Petitioner acknowledged that at his preliminary hearing, he heard the sworn testimony of the victim and a police officer. He acknowledged that Counsel discussed his case when he first met him in his office in January and that Counsel met with him prior to his preliminary hearing and represented him at the preliminary hearing. He agreed that he could have spoken with Counsel about his case at the preliminary hearing but chose not to. He acknowledged that he received a packet of discovery materials from Counsel with a letter dated September 1, 2010, instructing him that should he have "any questions or concerns," to not "hesitate to contact our office and make an appointment."

Counsel testified that the Petitioner retained his services on January 18, 2010, at which time Counsel "mapped" out the Petitioner's charges and the preliminary hearing process to him. Counsel stated that he "spent a long time [with the Petitioner at] the first meeting." Counsel testified that he did not interview anyone prior to the preliminary hearing, which he conducted, but he was able to "very, very thoroughly" cross-examine the victim and "all the other witnesses."

Counsel testified that the Petitioner did not "want to commit . . . as to anything that happened" and instead presented Counsel with hypothetical scenarios. Counsel said he continued to ask the Petitioner what his defense was, but three days prior to the scheduled trial, the Petitioner still had not "told [counsel] a defense." Counsel told the Petitioner he was willing to go to trial, and counsel said he "would have worked with what [he] had." Counsel was prepared to present a case of self-defense because the victim, a boxer, was "mouthing" with the Petitioner on the Petitioner's property. Counsel further believed that the presence of cocaine and the excessive alcohol found in the victim's system would have "dilut[ed] the element of premeditation[.]" Counsel commented that "[w]hen [the Petitioner] decid[ed] what he was going to say happened, then [he] [could] start talking about a more definitive defense."

Counsel outlined his understanding of the plea agreement in diagram form to the Petitioner on October 8, 2010, which was entered into evidence at the hearing. Counsel testified that he expected the Petitioner's probation would be revoked and that the court would impose a consecutive sentence. With this in mind, Counsel believed "it was a smarter move [to plead] than going to trial."

On cross-examination, Counsel stated that for the last twenty of his thirty years of practicing law, he had focused "almost exclusively" on criminal work. He held several

certifications in trial work and gave seminars on "trial skills and criminal trial practice." For the past twelve years he served as an instructor at the Tennessee Criminal Defense College. Counsel further testified that he explained to the Petitioner that meeting with the parole board in seven years did not guarantee release. Counsel described the Petitioner as "a smart, smart man," and Counsel believed the Petitioner understood his rights and made an "informed decision."

Officer Jackie Fennesy testified that the Lauderdale County Sheriff's Department dispatched him to the hospital to meet the victim the day of the crime. He stated that prior to being airlifted for surgery, the victim identified the Petitioner from an array of photographs. The officer never spoke with Counsel or his associate. On cross-examination, Officer Fennesy said the victim identified his shooter as "Skinny," and the officer did not know who "Skinny" was. Officer Fennesy included in his array a photograph of Cortezmon Jones, who lived next door to the lot where the shooting occurred. He said he investigated the house where the shooting occurred and "went to [the Petitioner's] job[] and . . . pulled his job record," which showed that the Petitioner was not at work on the day of the shooting.

In its order denying relief, the post-conviction court stated the following:

[Counsel] discussed the possible defenses to the charges with [P]etitioner. The [P]etitioner never committed to what happened or as to which defense he would go with at trial. The [P]etitioner never would discuss the facts of which defense. At the time of the plea he had not committed as to the facts with [Counsel], and at this late date at the hearing on post conviction he is still non-committal.

. . . . An informed decision was made to accept the State's offer. . . .The [Petitioner] received a substantial reduction in sentence from the possible sentence he would receive if convicted.

The Court finds that Petitioner was adequately informed of the nature and consequences of the plea agreement, and the punishment to be received. His attorneys made adequate investigation of the facts.

The Court finds that the [Petitioner] actually understood the significance and consequences of the particular decision to plead guilty and the decision was not coerced. The [Petitioner] was fully aware of the direct consequences of the plea. He was informed at the plea hearing of the sentence.

The Court finds that [P]etitioner has failed to establish the factual allegations contained in his petition by clear and convincing evidence. The [P]etitioner has not shown that (a) the services rendered by trial counsel were deficient and (b) the deficient performance was prejudicial. The [P]etitioner has not shown that the services rendered or the advice given was below the range of competence demanded of attorneys in criminal cases. The [P]etitioner has not shown that there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different.

The Petitioner timely filed a notice of appeal.

## ANALYSIS

The Petitioner contends that the trial court erred in denying his petition for post-conviction relief. He argues that Counsel was ineffective by failing to "adequately investigate the case, explain the other options available to the [Petitioner] including potential defenses, [and] spend sufficient time conferring with the [Petitioner] about the charges he faced." He contends he did not enter a knowing, intelligent, and voluntary guilty plea, and that "but for [C]ounsel's errors, [he] would not have pled guilty and would have insisted on going to trial." The State responds that the trial court accredited the testimony of Counsel and not of the Petitioner, and that the Petitioner has failed to meet his burden of proof. We agree.

Post-conviction relief is only warranted when a petitioner establishes that his or her conviction is void or voidable because of an abridgement of a constitutional right. T.C.A. § 40-30-103 (2006). The Tennessee Supreme Court has held:

A post-conviction court's findings of fact are conclusive on appeal unless the evidence preponderates otherwise. When reviewing factual issues, the appellate court will not re-weigh or re-evaluate the evidence; moreover, factual questions involving the credibility of witnesses or the weight of their testimony are matters for the trial court to resolve. The appellate court's review of a legal issue, or of a mixed question of law or fact such as a claim of ineffective assistance of counsel, is de novo with no presumption of correctness.

Vaughn v. State, 202 S.W.3d 106, 115 (Tenn. 2006) (internal quotation and citations omitted). "The petitioner bears the burden of proving factual allegations in the petition for post-conviction relief by clear and convincing evidence." Id. (citing T.C.A. § 40-30-110 (f); Wiley v. State, 183 S.W.3d 317, 325 (Tenn. 2006)). Evidence is considered clear and

-6-

convincing when there is no serious or substantial doubt about the accuracy of the conclusions drawn from it. Hicks v. State, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998) (citing Hodges v. S.C. Toof & Co., 833 S.W.2d 896, 901 n.3 (Tenn. 1992)).

Vaughn further repeated well-settled principles applicable to claims of ineffective assistance of counsel:

> The right of a person accused of a crime to representation by counsel is guaranteed by both the Sixth Amendment to the United States Constitution and article I, section 9, of the Tennessee Constitution. Both the United States Supreme Court and this Court have recognized that this right to representation encompasses the right to reasonably effective assistance, that is, within the range of competence demanded of attorneys in criminal cases.

202 S.W.3d at 116 (internal quotations and citations omitted).

In order to prevail on an ineffective assistance of counsel claim, the petitioner must establish that (1) his lawyer's performance was deficient and (2) the deficient performance prejudiced the defense. Id. (citing Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975)). "[A] failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim. Indeed, a court need not address the components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component." Goad v. State, 938 S.W.2d 363, 370 (Tenn. 1996) (citing Strickland, 466 U.S. at 697, 104 S. Ct. at 2069).

A petitioner successfully demonstrates deficient performance when the clear and convincing evidence proves that his attorney's conduct fell below "an objective standard of reasonableness under prevailing professional norms." Id. at 369 (citing Strickland, 466 U.S. at 688, 104 S. Ct. at 2065; Baxter, 523 S.W.2d at 936). Prejudice arising therefrom is demonstrated once the petitioner establishes "'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" Id. at 370 (quoting Strickland, 466 U.S. at 694, 104 S. Ct. at 2068). In order to satisfy the "prejudice" requirement in the context of a guilty plea, a petitioner "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59, 106 S. Ct. 366, 370 (1985); see Serrano v. State, 133 S.W.3d 599, 605 (Tenn. 2004).

**I. Ineffective Assistance of Counsel.** The Petitioner contends that Counsel "did not

properly investigate the facts in this case by interviewing key witnesses and reviewing appropriate existing legal arguments and non-frivolous arguments for the extension or change of existing law." The post-conviction court determined that Counsel "made adequate investigation of the facts."

The Petitioner's brief to this court fails to identify with any particularity which witness the Petitioner believes Counsel should have interviewed or what arguments he maintains that Counsel failed to argue. We glean from the post-conviction hearing that the Petitioner believes that Counsel should have interviewed the victim, Cortezmon Jones, and various other police officers. However, none of these individuals testified at the post-conviction hearing, and this Court has repeatedly held that "[w]hen a petitioner contends that trial counsel failed to discover, interview, or present witnesses in support of his defense, these witnesses should be presented by the petitioner at the evidentiary hearing." Black v. State, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990). The presentation of the witness at the post-conviction hearing is the only way for the petitioner to establish:

> (a) a material witness existed and the witness could have been discovered but for counsel's neglect in his investigation of the case, (b) a known witness was not interviewed, (c) the failure to discover or interview a witness inured to his prejudice, or (d) the failure to have a known witness present or call the witness to the stand resulted in the denial of critical evidence which inured to the prejudice of the petitioner.

Id. Because the Petitioner failed to present any of these individuals at the post-conviction hearing, he is not entitled to relief on this issue.

In his amended petition for post-conviction relief, the Petitioner asserted that Counsel should have argued that the Petitioner "could not have been properly charged with employment of a firearm during the commission of a dangerous felony because the employment of a firearm was a[n] essential factual element that the [S]tate needed to prove in this particular case to meet its burden of proof for attempted first degree murder." As an initial matter, we consider this issue as moot because the State dismissed the employment of a firearm during the commission of a dangerous felony charge. In addition, the Petitioner failed to address this issue during the hearing before the post-conviction court, and the court did not provide an analysis of this issue in its order. Finally, there is no mention whatsoever of this issue in the Petitioner's appellate brief to this court. Accordingly, we conclude that this issue is waived.

Next, the Petitioner contends that Counsel failed to advise him of potential defenses and "what evidence would most likely be admitted at trial." The post-conviction court found

that Counsel "discussed the possible defenses to the charges with [the P]etitioner," and that the Petitioner "was aware of the proof against him." At the evidentiary hearing, the Petitioner acknowledged that Counsel had discussed with him (1) the absence of the gun, (2) that someone else shot the victim, and (3) that the victim was intoxicated at the time of the offense. Accordingly, the record supports the determination of the post-conviction court, and the Petitioner is not entitled to relief on this issue.

Citing Kevin Jerron Cook v. State, No. M2004-02413-CCA-R3-PC, 2005 WL 2477531 (Tenn. Crim. App. Oct. 6, 2005), the Petitioner apparently argues that Counsel was ineffective for failing to advise the Petitioner of a direct consequence of his guilty plea. We are puzzled by the Petitioner's citation and reliance on Cook because, once again, this issue was not raised in his petition for post-conviction relief nor developed in any meaningful way during the hearing before the post-conviction court. The Petitioner's brief generally cites Cook, but fails to identify any direct or collateral consequence of the plea agreement of which he was not advised. Accordingly, we conclude that this issue is waived, and the Petitioner is not entitled to relief.

The Petitioner further contends that Counsel did not "spend sufficient time conferring with the [Petitioner] about the charges that he faced." The post-conviction court noted that "[u]pon cross-examination, the [P]etitioner's memory was refreshed about multiple meetings with his attorneys" in both Memphis and Ripley, Tennessee. The court also found that Counsel had recorded ten discussions with the Petitioner. At the plea hearing, the Petitioner testified that he had "adequate time to meet with an attorney to discuss this case and any defense to the charges." At the evidentiary hearing, the Petitioner testified that Counsel answered the Petitioner's calls to his cell phone but that they "didn't want to talk over the phone. So I had to set up a meeting or something to go down." Counsel testified that, until October 2010, the Petitioner was "out of custody and could come to my office whenever he wanted to. Those are his choices of when to come to my office and talk to me." The record supports the determination of the post-conviction court. Accordingly, the Petitioner has failed to show deficient performance or prejudice as a result.

**II. Voluntariness of Plea**. The Petitioner argues that he "relied on the deficient performance of his counsel in making a decision to enter a guilty plea. As such, [the Petitioner's] plea was not entered into voluntarily and knowingly and resulted in prejudice to him." The post-conviction court found that the "Petitioner freely entered a plea of guilty. . . . Petitioner was adequately informed of the nature and consequences of the plea agreement, and the punishment to be received. . . . [T]he [Petitioner] actually understood the significance and consequences of the particular decision to plea guilty and the decision was not coerced."

When analyzing the validity of a guilty plea, we follow the federal landmark case of Boykin v. Alabama, 395 U.S. 238, 89 S. Ct. 1709 (1969), and the Tennessee landmark case of State v. Mackey, 553 S.W.2d 337 (Tenn. 1977), superseded on other grounds by rule as stated in State v. Wilson, 31 S.W.3d 189, 193 (Tenn. 2000). State v. Pettus, 986 S.W.2d 540, 542 (Tenn. 1999). In Boykin, the United States Supreme Court held that a trial court may not accept a guilty plea unless there is an affirmative showing that the guilty plea was "intelligent and voluntary." 395 U.S. at 242, 89 S. Ct. at 1711. When accepting a guilty plea, the trial court is responsible for "canvassing the matter with the accused to make sure he has a full understanding of what the plea connotes and of its consequence." Id. at 244, 89 S. Ct. at 1712. In Mackey, the Tennessee Supreme Court held that "the record of acceptance of a defendant's plea of guilty must affirmatively demonstrate that his decision was both voluntary and knowledgeable, i.e., that he has been made aware of the significant consequences of such a plea; otherwise, it will not amount to an 'intentional abandonment of a known right.'" 553 S.W.2d at 340.

The Tennessee Supreme Court has emphasized that a plea is not voluntary if it is the result of "'[i]gnorance, incomprehension, coercion, terror, inducements, [or] subtle or blatant threats . . . .'" Blankenship v. State, 858 S.W.2d 897, 904 (Tenn. 1993) (quoting Boykin, 395 U.S. at 242-43, 89 S. Ct. at 1712). A trial court must look at a number of circumstantial factors before determining whether a guilty plea is voluntary and intelligently made. Id. These factors include "the relative intelligence of the defendant; the degree of his familiarity with criminal proceedings; whether he was represented by competent counsel and had the opportunity to confer with counsel about the options available to him; the extent of advice from counsel and the court concerning the charges against him; and the reasons for his decision to plead guilty, including a desire to avoid a greater penalty that might result from a jury trial." Id. (citing Caudill v. Jago, 747 F.2d 1046, 1052 (6th Cir. 1984))).

At the plea hearing, the trial court followed the guidelines of Rule 11(b) of Tennessee Rules of Criminal Procedure and questioned the Petitioner extensively about the terms and consequences of the plea agreement. In response, the Petitioner acknowledged that he understood the charges, his sentences, the plea agreement, and the constitutional rights he was forgoing by waiving trial. At the evidentiary hearing, the Petitioner agreed that Counsel discussed the advantages and disadvantages of going to trial. He said that he accepted the plea because he understood that he "would do the minimum of seven years" before meeting with the parole board. He then interjected that he will "go up for parole in 2013," which is ahead of schedule. He agreed that he chose to take the plea to not risk losing the advantage of having twenty years running concurrently, and he testified "[i]t was [his] decision to go to trial." Counsel characterized the Petitioner as a "smart, smart man," and the post-conviction court found "[n]othing in the record . . [that] indicates that the [Petitioner's] plea was involuntary."

Based on this record, the trial court concluded, and we agree, that the Petitioner entered knowing, intelligent, and voluntary guilty pleas.  The Petitioner is not entitled to relief in this matter.

## **CONCLUSION**

Upon review, we affirm the judgment of the post-conviction court.


_____
CAMILLE R. McMULLEN, JUDGE